

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| In re: | * | |
| VIRGINIA J. KOEP, | * | Case No. 04-10326-NVA |
| | | (Chapter 7) |
| Debtor. | * | |
| * * * * * * * | * * * * * * | |
| GUARANTY RESIDENTIAL LENDING, INC. | * | |
| | * | |
| Plaintiff, | | |
| | * | |
| v. | | Adversary No. 04-1420-NVA |
| | * | |
| VIRGINIA J. KOEP, | | |
| | * | |
| Defendant. | | |
| | * | |
| * * * * * * * | * * * * * * | |

**MEMORANDUM OF DECISION DENYING MOTION OF
<u>GUARANTY RESIDENTIAL LENDING, INC. FOR SUMMARY JUDGMENT</u>**

On April 9, 2004, the Plaintiff, Guaranty Residential Lending, Inc. ("GRL" or the

"Plaintiff"), filed a Complaint [1] against Virginia J. Koep ("Ms. Koep" or the "Debtor") seeking

a determination that certain debts allegedly owed to it by the Debtor are nondischargeable

pursuant pursuant to 11 U.S.C. § 523(a)(2). On June 29, 2004, the Debtor filed a motion to dismiss [6], which motion was denied by Order entered September 17, 2004 [17]. An Amended Scheduling Order was entered January 18, 2005 [20]. On April 13, 2005, the Plaintiff filed a Motion for Partial Summary Judgment and Memorandum of Law in Support (the "Motion") [23].

The Motion included two exhibits, the second of which contained nineteen exhibits of its own. On May 13, 2005, the Debtor filed a Response to Partial Summary Judgment Motion (the "Response") [26]. On June 16, 2005, the Plaintiff filed its Reply Memorandum in Support of Motion for Partial Summary Judgment (the "Reply") [33].

      The parties subsequently agreed to hold in abeyance the deadlines set forth in that scheduling order pending the outcome of the Plaintiff's Motion for Summary Judgment. The Court has reviewed the pleadings and the record in this case and does not believe a hearing will aid the decisional process. For the reasons set forth below, the Motion will be denied.

## Standard for Summary Judgment

      Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides:

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. Proc. 56(c).

      The Rule further provides:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts

  showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment if appropriate, shall be entered against the adverse party."

Fed. R. Civ. Proc. 56(e).

  One of the principal purposes of summary judgment is to isolate and dispose of all factually unsupported claims or defenses. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). To that end, the Court considers all evidence in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986) (all justifiable inferences are drawn in the nonmovant's favor). The mere existence of an alleged factual dispute does not defeat a motion for summary judgment; rather the standard requires that there be no genuine issue of *material* fact. *Id*. at 247-48. Only disputes over the facts that might affect the outcome of the lawsuit under applicable law will preclude entry of summary judgment. *Id*. Therefore, once a motion for summary judgment is made and supported as provided in the Rule, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. Proc. 56(e). The nonmovant may rely on any evidentiary materials listed in Rule 56(c), except the motions themselves. *Celotex,* 477 U.S. at 325. If reasonable minds could differ as to the import of the evidence, summary judgment should not be granted. *Liberty Lobby, Inc.*, 477 U.S. at 248.

  The Court relies on the following evidentiary materials submitted by GRL:

  1. Complaint and the attached "Extracts of Notes and Deeds of Trust;

  2. Virginia J. Koep's Answers and Objections to First Set of Interrogatories to Defendant (the "Discovery Responses"), undated, attached to the Motion as Exhibit 1;

  3. Declaration of Christine Poyner, Senior Exception Loan Auditor for GRL, dated April 11, 2005 (the "Declaration"), attached to the Motion as Exhibit 2;

    4.       HUD-1 Settlement Statement for real property located at 504 G Street, N.E., Washington, D.C. 20002 (the "G Street Property"), dated October 3, 2002, attached to the Declaration as Exhibit A;

    5.       HUD-1 Settlement Statement for real property located at 34 Seaton Place, N.W., Washington, D.C. 20001 (the "Seaton Place Property"), dated November 15, 2002, attached to the Declaration as Exhibit B;

    6.       HUD-1 Settlement Statement for real property located at 1426 Independence Avenue, S.E., Washington, D.C. 20009 (the "Independence Avenue Property"), dated November 27, 2002, attached to the Declaration as Exhibit C;

    7.       Appraisal of Real Property for the G Street Property, dated September 25, 2002, attached to the Declaration as Exhibit D;

    8.       Appraisal of Real Property for the Seaton Place Property, dated November 9, 2002, attached to the Declaration as Exhibit E;

    9.       Uniform Residential Loan Application for the G Street Property, dated October 3, 2002, attached to the Declaration as Exhibit G;[1]

    10.      Uniform Residential Loan Application for the Seaton Place Property, dated November 14, 2002, attached to the Declaration as Exhibit H;

    11.      Uniform Residential Loan Application for the Independence Avenue Property, undated October 3, 2002, attached to the Declaration as Exhibit I;

    12.      Appraisal of Real Property for the G Street Property, dated March 13, 2004, attached to the Declaration as Exhibit J;

---

[1]    The Declaration refers to an Appraisal of Real Property for the Seaton Place Property as Exhibit F, however, this exhibit is not attached to the Declaration and the Court has not reviewed it.

13. Appraisal of Real Property for the Seaton Place Property, dated March 13, 2004, attached to the Declaration as Exhibit K;

14. Appraisal of Real Property for the Independence Avenue Property, dated March 13, 2004, attached to the Declaration as Exhibit L;

15. HUD-1 Settlement Statement for the G Street Property, dated November 10, 2004, attached to the Declaration as Exhibit M;

16. Check in the amount of $455,419.65 representing proceeds paid to GRL upon the sale of the G Street Property, attached to the Declaration as Exhibit N;

17. HUD-1 Settlement Statement for the Seaton Place Property, dated December 8, 2004, attached to the Declaration as Exhibit O;

18. Check in the amount of $322,087.71 representing proceeds paid to GRL upon the sale of the Seaton Place Property, attached to the Declaration as Exhibit P;

19. HUD-1 Settlement Statement for the Independence Avenue Property, dated December 16, 2004, attached to the Declaration as Exhibit Q;

20. Check in the amount of $298,000.00 representing proceeds paid to GRL upon the sale of the Independence Avenue Property, attached to the Declaration as Exhibit R; and

21. Statement of the Offense of Vicki Robinson, settlement agent for Vanguard Title and Escrow Company filed in the U.S. District Court for the District of Columbia in a case captioned *United States v. Robinson*, Criminal Action No. 04-488 (GK).

The Court also relies on the Notes and Deeds of Trust for each property attached as an exhibit to the Complaint. The Debtor submitted no evidentiary materials in support of her Response but alleged several facts to be in dispute. Based on the foregoing, and as set forth

below, the Court finds that there are issues of material fact and that the Plaintiff is not entitled to judgment as a matter of law.

## Facts

The following facts are not in dispute. In August 2002, the Debtor and her husband met with Mr. Charles Hall, a loan officer employed by GRL ("Mr. Hall"). Mr. Hall devised a plan whereby he and others originated loans through GRL for the purchase of real property in need of rehabilitation in the District of Columbia. Mr. Hall would recruit "investors," like the Debtor, who would contribute a nominal fee to participate in a so-called "investment program." The investor would sign the various settlement and loan documents, the loans would be approved and the proceeds were to be used, at least in part, to renovate the properties. While the properties were being renovated, Mr. Hall was to provide the investor with some of the loan proceeds to pay the mortgage. Once rehabilitated, the properties would be sold and Mr. Hall would receive 80% of the sale proceeds and the remaining 20% would be paid to the investor.

The Debtor decided to invest in Mr. Hall's plan. She paid him $5,000.00 for the purchase of the G Street Property, the Seaton Place Property and the Independence Avenue Property.[2] Mr. Hall prepared the loan applications and other settlement papers. On October 3, 2002, the Debtor signed the loan application for the G Street Property. In that application, she stated that she had been retired and self-employed for 25 years, her gross monthly income was $25,000.00 and her assets totaled $756,649.41. According to the HUD-1 Settlement Statement for this property, the Debtor paid a deposit or downpayment of $10,000.00 and contributed $67,632.16 toward closing costs. The Debtor attended closing on the purchase of this property,

---

[2] The Court notes that there appears to be a fourth property located at 1607 Lincoln Road, N.E., Washington, D.C. 20002, which is not included in this adversary proceeding.

-6-

signed the settlement papers and also signed the Note and Deed of Trust evidencing the loan given to her by GRL.

About 30 days later, on November 14, 2002, the Debtor signed the loan application for the Seaton Place Property.  In that application, she stated that she had been retired for five years, her gross monthly income was $18,000.00 and her assets totaled $806,649.41.  According to the HUD-1 Settlement Statement for this property, the Debtor paid a deposit or downpayment of $50,000.00 and contributed $21,018.36 toward closing costs.  The Debtor attended closing on the purchase of this property, signed the settlement papers and also signed the Note and Deed of Trust evidencing the second loan given to her by GRL.

On or before November 27, 2002, about two weeks after closing on the Seaton Place Property, the Debtor signed the loan application for the Independence Avenue Property.  In that application, she stated that she had been retired for five years, her gross monthly income was $25,000.00 and her assets totaled $794,021.50.  According to the HUD-1 Settlement Statement for this property, the Debtor paid a deposit or downpayment of $55,000.00 and contributed $11,364.96 toward closing costs.  The Debtor did not attend closing on the purchase of this property because she was out of town at the time, but she gave permission to a title agent to sign the documents on her behalf.

Each HUD-1 Settlement Statement contains the following representation above the Debtor's signature:

> "I have carefully reviewed the HUD-1 Settlement Statement and
> to the best of my knowledge and belief it is a true and accurate statement

>of all receipts and disbursements made on my account or by me in this transaction."

*See* HUD-1 Settlement Statements, Exhibits A-C of the Declaration.

Notwithstanding the recitation in the HUD-1 Settlement Statements of various closing costs, deposits and other payments made by the Debtor, and notwithstanding the representation cited above, the Debtor did not pay any such amounts. *See* Answer No. 9 of the Discovery Responses, Exhibit 1 of the Motion.

The Debtor received from Mr. Hall the following proceeds from the loans:

1. G Street Property: $39,209.88, which is comprised of six mortgage payments of $4,884.98 each ($29,309.88) and $9,900.00 return on her investment;

2. Seaton Place Property: $23,476.84, which is comprised of four mortgage payments of $3,594.21 each ($14,376.84) and $9,100.00 return on her investment; and

3. Independence Avenue Property: $25,224.48, which is comprised of four mortgage payments of $4,031.12 each ($16,124.48) and $9,100.00 return on her investment.

Mr. Hall ceased making payments to the Debtor for the mortgage. The Debtor then defaulted on the loans. In addition, the renovations were not made. In November 2003, GRL repurchased the loans and commenced foreclosure proceedings. On January 6, 2004, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. According to the Debtor's Statement of Financial Affairs, her gross annual income for 2002 was $34,416.00. *See* Statement of Financial Affairs. On April 9, 2004, the Plaintiff filed the Complaint. On April 14, 2004, the Plaintiff obtained relief from the automatic stay in order to continue foreclosure proceedings on all three properties [20, 21 and 22].

**Discussion**

The Motion seeks judgment as a matter of law on Counts I and II of the Complaint.[3] Count I seeks a determination that the deficiencies on the three loans to the Debtor are nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (B) based on misrepresentations made by the Debtor on the loan applications and/or HUD-1 Settlement Statements about her income, assets, and money paid by her at closing on each loan. Count II seeks a determination that the debts are nondischargeable under 11 U.S.C. §§ 523(a)(2)(a) and (B) based on conspiracy by and among the Debtor, Mr. Hall, and others named as defendants in the litigation commenced in the U.S. District Court for the District of Maryland, captioned, *Guaranty Residential v. ARD Development, et al.*, Case No. 03-1664 (AW). The Court discusses each in turn.

**Nondischargeability under 11 U.S.C. § 523(a)(2)**

Section 523(a)(2) of the Bankruptcy Code excepts from discharge certain debts or money, property, services, or an extension of credit to the extent it was obtained by:

> "(A) false pretenses, a false representation, or actual fraud, other than a statement in writing respecting the debtor's or an insider's financial condition;
>
> (B) use of a statement in writing -
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with the intent to deceive."

11 U.S.C. §§ 523(a)(2)(A) and (B).

---

[3] The Plaintiff is not seeking summary judgment as to Count III of the Complaint, which states a count under Civil Racketeer Influenced and Corrupt Organizations Act.

A debtor's misconduct under Section 523(a) need only be shown by a preponderance of the evidence. *First Nat'l. Bank of Md. v. Stanley (In re Stanley),* 66 F. 3d 664, 667 (4th Cir. 1995) (citing *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654 (1991). However, exceptions to discharge are strictly construed against creditors in order to protect a debtor's fresh start. *Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137, 148 (Bankr. D. Md. 1999) (internal citations omitted).

### *Section 523(a)(2)(A)*

In order to sustain an action under Section 523(a)(2)(A) of the Bankruptcy Code, a plaintiff must show that: (1) the defendant made a representation; (2) the defendant knew at the time she made the representation that it was false; (3) the defendant made the representation with the intent and purpose to deceive the plaintiff; (4) the plaintiff justifiably relied on the false representation; and (5) the plaintiff suffered damages as a proximate result of the representation. *Id*. At 149. Misrepresentation can be any words or conduct which produce a false or misleading impression of fact in the mind of another. *Kendrick v. Pleasants (In re Pleasants)*, 231 B.R. 893, 897 (Bankr. E.D. Va. 1999). *See also Foley & Lardner v. Biondo (In re Biondo),* 180 F. 3d 126, 134 (4th Cir. 1999) (citing *Field v. Mans*, 516 U.S. 59, 116 S. Ct. 437 (1995) (adopting the definition of the Restatement (Second) of Torts § 525 (1976): "one who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation").

Intent to deceive may be inferred by the circumstances, including whether the defendant knowingly or recklessly made false representations, which she should know would induce the plaintiff to rely on them. *In re Pleasants*, 231 B.R. at 898. Section 523(a)(2)(A) does not

require an overt misrepresentation.  *Id*. at 897 (internal citations omitted).  Reliance by the plaintiff is also based on the circumstances of the particular case.  *See Boyd v. Loignon (In re Loignon)*, 308 B.R. 243, 249 (Bankr. M.D.N.C. 2004) (to prove justifiable reliance, the plaintiff must show some degree of diligence in determining creditworthiness based on the situation at hand).  *See also Field v. Mans*, 516 U.S. at 71, 116 S. Ct. at 444 (justification is a matter of quality and characteristics of a particular plaintiff and circumstance of the particular case and not a community standard of conduct).  However, the plaintiff is required to exercise some judgment:

> "[A person] is required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation."

*Id*. (citing the Restatement (Second) of Torts § 541 (1976).

GRL asserts that the Debtor made numerous false representations in order to obtain loans for which she clearly did not qualify.  She signed the loan applications, the HUD-1 Settlement Statements and other loan documents.  She physically attended two of the three closings.  The amounts of money she agreed to borrow and repay were not insignificant.  The fact that she did not read or understand what she signed, as she states in the Response, suggests, at the very least, a reckless indifference to the content of the papers.

However, GRL, identifies itself in the Complaint as a financial institution in the business of originating mortgage loans secured by real estate.  It is in the business of reviewing loan applications, settlement statements and other loan documents on a regular basis.  The Court is not persuaded, based on the papers before it, that GRL justifiably relied on the representations made in the papers, particularly after the first loan transaction.  For this reason, it is not clear that

GRL is entitled to judgment as a matter of law and summary judgment on the basis of 11 U.S.C. § 523(a)(2)(A) will not be granted.

### *Section 523(a)(2)(B)*

In order to sustain an action under Section 523(a)(2)(B) of the Bankruptcy Code, a plaintiff must show that: (1) the defendant made a written statement; (2) the written statement was about her financial condition; (2) the statement was materially false; and (4) the defendant published the statement with the intent to deceive the plaintiff; and (5) the plaintiff reasonably relied on the false statement. *Ins. Co. of North America v. Cohn (In re Cohn)*, 54 F. 3d 1108, 1114 (3d Cir. 1995); *Global Express Money Orders, Inc. v. Davis (In re Davis)*, 262 B.R. 673, 679 (Bankr. E.D. Va. 2001). The intent to deceive may be inferred by the totality of the circumstances, including a debtor's knowing or reckless disregard for the accuracy of financial statements. *In re Cohn*, 54 F. 3d at 1119; *In re Davis*, 262 B.R. at 680. A written statement is materially false if it paints a substantially untruthful picture of the defendant's financial condition by misrepresenting information of the type that would normally affect a plaintiff's decision to grant credit. *In re Davis*, 262 B.R. at 680. Mere inaccuracy is not sufficient, rather, material falsity requires a significant understatement of liabilities or exaggeration of assets. *Master Financial, Inc. v. DeJulio (In re DeJulio)*, 322 B.R. 456, 461 (Bankr. M.D. Fla. 2005).

As to the reliance requirement, the standard under this section is "reasonable" rather than "justifiable." The reasonable standard is usually met by evidence that the loan would not have been extended if accurate information about the borrower's financial status had been disclosed. *Id*. (citing *In re Coughlin*, 27 B.R. 632, 637 (B.A.P. 1st Cir. 1983)). Several factors are considered in determining whether a plaintiff reasonably relied upon a false financial statement: (1) creditor's standard practice in evaluating whether a borrower is creditworthy; (2) standards or

customs in the industry in evaluating creditworthiness, i.e, what constitutes a commercially reasonable investigation of the data supplied by a potential borrower; and (3) circumstances that exist at the time of the application for credit, i.e., whether there are any indications (or "red flags") that would alert an ordinarily prudent lender to the possibility that the data is inaccurate. *In re Cohn*, 54 F. 3d at 1117.

The gross monthly income reported by the Debtor on the loan applications varied over a short period of time – the Debtor reported gross monthly income of $25,000.00 on October 3, 2002, $18,000.00 per month on November 14, 2002, and $25,000.00 per month on November 27, 2002. Also, after the first loan, each subsequent loan application failed to disclose the prior purchase of real estate, which significantly affects both the asset and liability figures. These are significant discrepancies, variations and/or omissions in loan applications that were submitted in close proximity to one another. Accordingly, the Court concludes that the Debtor's loan applications were materially false.

However, this does not end the inquiry. As stated above, GRL is a mortgage lender. It is unclear what it's approval process entails beyond review of the documents and the appraisals prepared for the transactions. *See* Declaration attached to the Motion as Exhibit 2. That may be the sum of the lender's evaluation process. There is no discussion of the industry practice, and it may well be that it mirrors GRL's in this instance. However, a reasonable mind could conclude from the facts that further inquiry should have been made when the Debtor's name appeared on applications for three large loans in a matter of weeks. This is particularly the case with respect to the second and third loan applications. At that point, GRL had information in its hands about the previous purchases and omission of the property and the debt from the second and third loan application could have been reasonably ascertained. For this reason, it is not clear that GRL is

entitled to judgment as a matter of law and summary judgment on the basis of 11 U.S.C. § 523(a)(2)(B) will not be granted.

Accordingly, for the reasons set forth herein, the Court declines to rule on summary judgment that the Debtor is or was a part of a conspiracy to defraud the Plaintiff. The Court will deny the Motion for Summary Judgment of Guaranty Residential Lending, Inc. An Order will be entered contemporaneously with this Memorandum.

Cc:

Debtor
Debtor's counsel - John Burns, Esq.
Plantiff's counsel - Deborah Curran, Esq.
U.S. Trustee
Chapter 7 Trustee